Summons Issued SEA27950

FILED ___ ENTERED
LODGED ___ RECEIVED

JUL 29 2009  RF

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

Rebecca Roe
Kathryn Goater
Schroeter Goldmark & Bender
810 3rd Ave., Suite 500
Seattle, WA 98104
206.622.8000

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Lacey Carroll,

              Plaintiff,

v.

David Seth Kotkin, aka
David Copperfield, and
Jennifer Dillon,

              Defendants.

No. C09-1076JCC

COMPLAINT FOR PERSONAL INJURY

JURY TRIAL DEMANDED

09-CV-01076-CMP

## I. PARTIES AND JURISDICTION

1.1    Plaintiff Lacey Carroll is 22 years of age and resides in King County, Washington.

1.2    Defendant David Seth Kotkin is an adult male who resides on an island that he owns in the Caribbean and on information and belief has a residence in Las Vegas, Nevada. Defendant Kotkin is a citizen of the United States and a professional entertainer who goes by the stage name David Copperfield and hereinafter will be referred to as Defendant Copperfield. He conducted business in the State of Washington, including but not limited to a personal appearance in the state in January, 2007.

1.3    Defendant Jennifer Dillon was employed by Defendant Copperfield as his personal assistant during the time frame covered by the events herein. Her residence is not known.

COMPLAINT – 1
P:\Carroll\Complaint.doc

**ORIGINAL**

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1.4 The Court has jurisdiction pursuant to 28 USCS §1332 because the action involves citizens of different states and the matter in controversy exceeds the sum of $75,000.

## II. FACTS

2.1 Defendant Copperfield performed a magic show in Kennewick, Washington in January 2007. Plaintiff and her family purchased tickets and attended the show. When they arrived at the event they were met by an employee of the Defendant and told they had received upgraded seats for the show. During the show, Defendant Copperfield called upon Plaintiff as a member of the audience to join him on the stage to assist in one of his tricks.

2.2 At the conclusion of Ms. Carroll's assistance, one of defendant Copperfield's assistants advised her that she should remain in her seat at the conclusion of the show so that she could then be ushered backstage to meet Defendant Copperfield.

2.3 After the show, Defendant Dillon gave Ms. Carroll a questionnaire to complete that asked for her interests and contact information. Defendant Dillon explained that her picture would be taken with Defendant Copperfield and attached to the questionnaire. She also explained that Defendant Copperfield owned an island and resort and was often looking for people to do promotional work for him, including modeling for his brochures. She told Plaintiff that her answers and her photo would be kept and she might be asked to participate in promotional activities at his island. Defendant Dillon also told Ms. Carroll that attending one of those promotional events would be a good opportunity to meet others and to do some modeling.

2.4 Plaintiff's family was not permitted to accompany Ms. Carroll when she went back stage to meet him. She was asked to join Defendant Copperfield and his assistants at

COMPLAINT – 2

P:\Carroll\Complaint.doc

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

dinner and a movie. She declined the dinner but did meet the group for the movie thinking it would be a good opportunity for her to increase her chance of being included in the promotional activities described by Defendant Dillon.

2.5   Ms. Carroll was subsequently contacted by the defendants who both indicated a trip to the island would be a good thing because she could observe the locale of the promotions and see if she fit in with the work. They told Plaintiff others would be there and it might lead to modeling opportunities for her.

2.6   In March 2007, Defendant Dillon contacted Ms. Carroll to inform her she had been selected to come to the island in April to see if she would fit in for the promotional work. The day before she was supposed to go, Defendant Dillon contacted Ms. Carroll and told her the trip was canceled because there were too many people already going. Ms. Carroll wrote to Defendant Copperfield thanking him for considering including her in the promotional activities on his island and indicating she would like to go in the future.

2.7   In July, 2007 Ms. Carroll received a call from Defendant Copperfield stating they were having another promotional opportunity on his island at the end of the month and asked her if she wanted to be included. She indicated she would, and requested she be provided with her arrangements and tickets well in advance.

2.8   As before, Defendant Dillon and/or Defendant Copperfield contacted Ms. Carroll regarding the arrangements. Defendant Dillon assured Ms. Carroll that others would be in attendance for this promotional opportunity. Ms. Carroll asked if her boyfriend could also come and Dillon told her no, because there wasn't room. Defendant Dillon also assured Ms. Carroll that everyone would have their own room, that she would have access to email and telephone coverage and would be able to stay in contact with her family.

COMPLAINT – 3

P:\Carroll\Complaint.doc

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

2.9    Defendant Dillon, acting as the personal assistant to Defendant Copperfield, was aware of Copperfield's schedule and knew or should have known that this trip was not a promotional event, did not involve modeling opportunities for Ms. Carroll, and that Ms. Carroll would be alone with Defendant Copperfield in his house on the island. Both Defendant Dillon and Defendant Copperfield failed to disclose this material information to Plaintiff. They deliberately misled plaintiff and lured her to the island under false pretences. Plaintiff would not have traveled to the island but for the assurances that others would be present and she would be able to communicate with her family. She would not have traveled to Defendant Copperfield's home had she known she would be there alone with him, rather than with others participating in promotional activities.

2.10   Ms. Carroll left Seattle on a red eye flight on July 29, 2007 and flew to Houston, on to Ft. Lauderdale and then on to a small island in the Caribbean. She was met by someone who worked for Defendant Copperfield who accompanied her on a 40 minute car ride whereupon she was met by a private boat. She traveled another 45 minutes by boat to Defendant Copperfield's island. The island is only accessible by private boat.

2.11   When Plaintiff arrived on the island she realized no one else was in attendance other than Defendant Copperfield. Ms. Carroll asked where everyone else was and he stated that they would all be arriving the next day, August 1. Defendant Copperfield showed her to her room and then offered to drive her down to the beach Copperfield left Ms. Carroll at the beach, returned to Ms. Carroll's room and removed her passport from her purse. He then returned to the beach and told her he took the passport. He refused to return it claiming he needed it for information for the pilot.

COMPLAINT – 4

P:\Carroll\Complaint.doc

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

2.12   Ms. Carroll ate dinner with Defendant Copperfield which dinner was served by a man who appeared to be in his employ. After dinner she went with Copperfield to watch a movie on a large television in his room. Defendant Copperfield then attacked Ms. Carroll and sexually assaulted her. He pinned her to the bed, pulled out a dildo and raped her with it. He also forced her to perform fellatio on him and threatened to kill her if she refused to swallow. Throughout the assault Ms. Carroll physically and verbally resisted Defendant Copperfield and struggled to get away from him.

2.13   Ms. Carroll was extremely traumatized by the assault. She attempted to telephone her family and boyfriend but was unable to obtain cell phone coverage. She attempted to use the house phone to contact her boyfriend but was interrupted during the call by the defendant Copperfield walking into her room holding a cordless phone to his ear while he stared at her. Plaintiff believed he was on an extension and listening to her call. She hung up and thereafter feared using the house telephone because she believed Defendant Copperfield would know if she did. She had no way to leave the island.

2.14   The next morning Ms. Carroll left Defendant Copperfield's house and walked the island in search of assistance and to hide from Defendant Copperfield. She observed three additional men jet skiing on the beach. When they stated they worked for him and were his good friends she felt they would not help her.

2.15   Defendant Copperfield found her and told her she was coming with him. He walked her to a beach that was accessed through his private quarters and ordered her to get naked. She told him she wanted to leave and refused to remove her clothing. He grabbed her, pushed her into the water and held her head under the water. She thought she might drown. He then told her, "this is an example of what you will get if you tell anyone.". He

COMPLAINT – 5

P:\Carroll\Complaint.doc

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

untied her swimsuit top and forced Ms. Carroll to masturbate him to ejaculation while he fondled her breasts.

2.16   Defendant Copperfield walked off after the assault at the beach. Ms. Carroll feared returning to the house, again walked the beach, but eventually returned to her room. Once in her room she got in the shower. While in the shower, Defendant Copperfield entered her room and pulled her out of the shower. He threw her on the bed, held her down and performed cunnilingus on her, masturbated himself and ejaculated on her chest.

2.17   Ms. Carroll was forced to spend the rest of that day and the following night on the island. The next morning she was scheduled to leave. A golf cart arrived to transport her to a boat. The men she had seen on the beach whom she believed were working for Defendant Copperfield were also present. In their company was a woman who Ms. Carroll had not seen prior to this departure. She was taken to another small island and put on a small plane that transported her to Ft. Lauderdale, and then driven to the main airport.

2.18   Ms. Carroll contacted her family and reported the assaults. She flew home and went directly to the Sexual Assault and Trauma Center at Harborview Hospital in Seattle. She also made a report to the Seattle Police Department. The FBI initiated an investigation, which is pending.

### III.   LIABILITY

3.1   Defendants acting in concert and Defendant Dillon acting as the agent and employee of Defendant Copperfield are liable to plaintiff for the harm caused by Defendant Copperfield's sexual and physical assaults on Plaintiff.

3.2   Defendants acting in concert and Defendant Dillon acting as the agent and employee of Defendant Copperfield are liable to plaintiff for the tort of outrage involving

COMPLAINT – 6

P:\Carroll\Complaint.doc

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1  harm caused by Defendant Copperfield's intentional or reckless infliction of emotional
2  distress on Plaintiff.

3.3     Defendants, acting in concert, and Defendant Dillon acting as the agent and employee of defendant Copperfield are liable to Plaintiff for negligent infliction of emotional distress.

3.4     Defendants acting in concert and Defendant Dillon acting as the agent and employee of Defendant Copperfield are liable to Plaintiff for fraudulent misrepresentation. Defendants lured plaintiff to Defendant Copperfield's home under false pretenses. Defendants misrepresented the reasons and circumstances under which plaintiff would be visiting Defendant Copperfield's private island, this misrepresentation was material, it was false, the defendants knew or should of known of its falsity, defendants intended plaintiff act on the misinformation, plaintiff was ignorant of the falsity of the information, plaintiff relied on the truth of the representation, plaintiff had a right to so rely on the misrepresentation, and plaintiff was damaged as a consequence.

3.5     Defendant Copperfield is liable to Plaintiff for false imprisonment.

## IV.    DAMAGES

4.1     As a proximate cause of the aforesaid acts, Plaintiff has sustained past general and special damages and will sustain future general and special damages including but not limited to:

   A.   Past, present and future pain and suffering, both physical and emotional;

   B.   Past, present and future emotional and psychological injury,

   C.   Past, present and future impaired earning capacity;

COMPLAINT – 7

P:\Carroll\Complaint.doc

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

     D.     Medical bills and other expenses for past and future treatment.

All of the above damages in an amount to be proven at the time of trial.

     E.     Attorneys fees and costs.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

Judgment against defendants for damages set forth in this complaint and for attorneys' fees and costs and such other relief as the Court deems just and equitable.

DATE this 29 day of July, 2009.

SCHROETER GOLDMARK & BENDER

_____
REBECCA ROE, WSBA #7560
KATHRYN GOATER, WSBA #9648

COMPLAINT – 8

P:\Carroll\Complaint.doc

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305