Hon. John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

LACEY CARROLL,

        Plaintiff,

v.

DAVID SETH KOTKIN a/k/a DAVID COPPERFIELD,

        Defendant.

No. C09-1076 JCC

DAVID COPPERFIELD'S RESPONSE TO MOTION TO LIFT STAY ORDER AND OTHER RELIEF

**ORAL ARGUMENT REQUESTED**

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

# I. INTRODUCTION

The Court should lift the stay. On January 12, 2010, the government officially declined to prosecute David Copperfield for any crime. The government's declination came immediately after Bellevue police determined that plaintiff Lacey Carroll made yet another false claim of rape, this time against a Seattle-area businessman in December 2009. Copperfield wants this litigation to proceed to expose Carroll's lawsuit for what it is – a fraudulent effort to obtain money from him.

In Carroll's motion to lift the stay, she asks the Court to enjoin the U.S. Department of Justice in its handling of evidence and investigative reports and other materials relating to its closed criminal investigation. Carroll's request for an injunction against the government is devoid of any merit. Carroll fails to articulate any legal basis for the extraordinary remedy of enjoining a *nonparty* from returning property to a person who has a *procedural right* to its return. Carroll also cannot show that she is likely to succeed in her efforts to obtain the documents she seeks from the government, as they are private third-party materials, and as her alleged right to such materials is based on the suspect assertion that the government's decision to drop its investigation was based on "jurisdictional" issues. In sum, Carroll's attempt to make the government her storage closet for easy discovery to pursue her fraudulent civil claim should be rejected.

Carroll bundles other discovery requests with her motion to lift the stay. She asks, for example, to be permitted to issue subpoenas upon the lifting of the stay. The Court should deny these discovery-related requests. These requests should be addressed at the conference required by Federal Rule of Civil Procedure 26(f), which must be conducted 21 days prior to the Court's initial status conference, currently scheduled for March 23, 2010. Because no Rule 26(f) conference has been held, and there has been no effort by Carroll to confer with Copperfield relating to the discovery issues raised by her motion, the requests should be denied without prejudice to raising them after the parties have conferred.

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 1

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

## II. BACKGROUND

On August 3, 2007, Lacey Carroll returned to her home in Seattle, Washington, from David Copperfield's private island in the Bahamas, where she had been invited by Copperfield and his staff to spend several days as a guest. Upon her return, Carroll concocted a series of egregious lies centering on allegations that, when she arrived at the island, she found herself "alone" with Copperfield and that, under Copperfield's constant watch, she was repeatedly raped and assaulted by him over a period of two days, during which she was a captive with no way to contact the outside world for help. *See generally* Complaint (Dkt. No. 1). Carroll's allegations against Copperfield are, and will be proven to be, totally false and absurd by numerous witnesses and documentary evidence, including telephone records.

As a part of her scheme, after returning from the Bahamas, Carroll consulted with Rebecca Roe, a prominent personal injury lawyer in Seattle. Declaration of Angelo J. Calfo ("Calfo Decl.") ¶ 2. Carroll also filed a report with the Seattle Police Department and had a rape examination performed at Harborview Medical Center. Compl. ¶ 2.18. She eventually met with the Federal Bureau of Investigation and the United States Attorney's Office for the Western District of Washington ("USAO") to pursue criminal charges against Copperfield to lend credibility to the civil action she was planning to file. Calfo Decl. ¶ 2.

Assistant U.S. Attorney ("AUSA") Susan Roe headed the federal grand jury investigation of Copperfield. *Id*. ¶ 4. (To our knowledge, AUSA Roe is not related to Rebecca Roe; however, they were at one time colleagues at the King County Prosecutor's Office in its Sexual Assault Unit. *Id*.)[1] AUSA Roe's investigation into Carroll's false allegations lasted for nearly two and a half years, at an untold cost to taxpayers. *Id*. On about

---

[1] It was material to the criminal investigation whether Carroll had retained a personal injury lawyer and whether she intended to file a civil complaint for damages. An alleged victim's desire to sue for money damages is most certainly a factor in evaluating bias or improper motive. Despite Rebecca Roe's involvement in the case from the beginning, on December 2, 2008, the USAO represented to Copperfield's counsel during the investigation that, "to the best of [their] knowledge," Carroll had not retained counsel and remained unrepresented. Calfo Decl. ¶ 3.

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 2

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1  January 7, 2010, AUSA Roe emailed Carroll's lawyers, advising that the decision to drop the
2  investigation was based on jurisdictional grounds: that "[n]o indictment was presented to the
3  Grand Jury as no federal criminal statute directly addresses the facts presented to it." *Id.* ¶ 5.
4  AUSA Roe stated that she intended to file a notice with this Court explaining that this was the
5  sole basis of the declination. *Id.*

6  Surprisingly, AUSA Roe refused to acknowledge – and continues to refuse to
7  acknowledge – that the Bellevue Police Department's recent investigation of Lacey Carroll,
8  for making a false claim of rape against a *different* man, had any bearing on the USAO's
9  decision to drop the federal investigation of Copperfield. Based on the content of the
10 Bellevue Police report of the investigation, and the timing of its disclosure to the USAO,
11 AUSA Roe's claim is puzzling if not lacking in credibility. According to Bellevue police, on
12 December 2, 2009, Carroll told the police that she had "blacked out" during a rendezvous
13 with a Seattle-area business businessman whom she met at a bowling alley. Calfo Decl. ¶ 10,
14 Ex. C. She claimed that she awoke half-naked in a hotel room to find the man "pinning" her
15 down to the bed. *Id.* (Carroll's use of the word "pinning" is reminiscent of her fabricated
16 allegation against Copperfield in her complaint in this case at paragraph 2.16). Evidence
17 detectives obtained from hotel security cameras and statements from hotel personnel and
18 other witnesses exposed Carroll's story as categorically false. In fact, Carroll had enticed the
19 man to rent a hotel room for them, performed fellatio on him, then demanded $2,000 for
20 sexual intercourse. *Id.* ¶ 9, Ex. B. When the man declined to pay Carroll for sex, she left the
21 hotel room and went to the lobby, where she began complaining that the man had assaulted
22 her. *Id.* Carroll later called "911" to report the alleged rape. *Id.*

23 After Carroll made her "911" call, Bellevue police interviewed her, and then asked
24 her to submit to a medical examination, or "rape kit." *Id.* ¶ 10, Ex. C. After submitting to the
25 examination, Carroll had an abrupt change of heart; she told Bellevue police that she did not
26 want to pursue the case or cooperate with their investigation because she had another case "in

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 3

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1 the works" against "a celebrity" that was "more important." *Id*. Carroll refused to provide
2 the results of her medical examination to Bellevue police; as a result, detectives obtained a
3 search warrant directed at the hospital for the information. *Id.* & Ex. A. The police report
4 recommends that Carroll be prosecuted for making a false rape claim and for prostitution. *Id.*
5 ¶ 9, Ex. B.

It is hard to imagine that information as material as that contained in the Bellevue police report would not have affected the USAO's decision to decline to proceed with Carroll's "other rape case" being handled by the USAO. This is particularly true because the USAO's criminal prosecution would have relied almost exclusively if not exclusively on Lacey Carroll's uncorroborated testimony, thus making Carroll's credibility the most significant factor in bringing the case. Moreover, AUSA Roe received the Bellevue police report on or about December 17, 2009, and announced her decision to drop the investigation of Copperfield to counsel on January 7, 2009. *Id.* ¶ 8 & 5. AUSA Roe had previously claimed to Copperfield's counsel that her investigation would not be completed until at least April 1, 2010 (which formed the basis of the Court's stay through that approximate date). *See Id.* ¶ 17 & Dkt. No. 12-2 at 9. An investigation that was going to take months was dropped by the USAO in just weeks, once the Bellevue report was issued.

After receiving AUSA Roe's proposed notice to this Court stating that the declination was due to jurisdictional issues with the case, Copperfield's counsel advised the USAO in writing of their concern that the notice, as then drafted, would potentially be misleading to this Court and to the public. Calfo Decl. ¶ 16. Thereafter, AUSA Roe filed a notice with this Court stating that the investigation had been concluded, but omitted any reference to the basis of its declination. See Dkt. No. 22. In a letter to Copperfield's counsel, however, AUSA Roe continued to maintain that the sole basis for dropping the criminal case against Mr. Copperfield was that federal statutes did not apply to the facts. Calfo Decl. ¶ 16.

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 4

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800 F 206.516.3888

1    Copperfield's counsel is concerned that AUSA Roe framed the declination in a
2    manner that would make it more likely that Carroll's lawyers would receive internal
3    investigative materials from the federal government that would assist Lacey Carroll in
4    pursuing her civil lawsuit.  These are the same investigative materials that Carroll's lawyers,
5    on this motion, have asked the Court to assist her in obtaining.  It is no coincidence that
6    immediately upon being told that the declination was based on jurisdictional issues, Carroll's
7    lawyers submitted a Freedom of Information Act request to the U.S. Department of Justice
8    stating that it was their "understanding that grand jury proceedings regarding the investigation
9    are concluded and no indictment will issue because of the absence of applicable federal
10   criminal laws." *See* Declaration of Amanda Lee, Ex. A at 5.  At about the same time,
11   Carroll's lawyers also announced to the press that the declination was based on jurisdictional
12   grounds, and that they expected to receive internal government investigative materials to
13   assist them in prosecuting their civil claims against Copperfield.  Calfo Decl. ¶ 18.  But
14   despite these assertions by Carroll's counsel, Department of Justice guidelines permit it to
15   deny disclosure of such internal investigative materials where to do so would not further the
16   public interest, such as where a litigant seeking the materials is making a false claim.
17   Copperfield submits that Carroll's right to investigative materials will be affected by the
18   fraudulent and false nature of her claim against Copperfield, as discussed below.

### III. DISCUSSION

**A.  PLAINTIFF'S REQUEST FOR AN INJUNCTION AGAINST THE UNITED STATES DEPARTMENT OF JUSTICE TO PREVENT RETURN OF PROPERTY TO COPPERFIELD IS PROCEDURALLY INAPPROPRIATE, WITHOUT LEGAL BASIS, AND UNNECESSARY**.

Carroll asks the Court to issue an order directing federal agencies to maintain possession of materials seized from Copperfield during the criminal investigation, as Carroll intends to issue subpoenas for such information.  Plf.'s Mot. at 1–2.  This is nothing less than a request for the issuance of an injunction against the U.S. Department of Justice from doing what it may otherwise be required to do under the law – namely, return Copperfield's

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 5

Yarmuth Wilsdon Calfo
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

property now that the criminal investigation is concluded. *See* Fed. R. Crim. P. 41(g); *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987) (holding that when government abandoned its investigation, person from whom property was seized "is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property").[2] Carroll's request should be denied.

### 1. Carroll's request for an injunction against the United States is procedurally improper.

Plaintiff's request is procedurally improper. The United States is not a party and Carroll has cited absolutely no legal basis for the issuance of an injunction against a nonparty in this matter. And, contrary to the clear requirements of Federal Rule of Civil Procedure 65, there is no indication that the United States has been given notice of this request for an injunction against it. *See* Fed. R. Civ. P. 65(a) ("The court may issue a preliminary injunction only on notice to the adverse party.").

Carroll cites Federal Rule of Civil Procedure 1 for the proposition that the Court should order the requested injunction. Plf.'s Mot. at 11. Rule 1 says nothing that expressly authorizes the injunction requested. In fact, Rule 1 is not a rule of substance, but merely explains the scope of the procedural rules and how courts are to interpret the *other* federal civil rules of procedure. *See* 4 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1011 (3d 2009). Carroll has not cited a single other procedural rule that supports her request. Unsurprisingly, Carroll does not cite, and Copperfield has not found, a single case in which a district court has issued an injunction or order of the kind requested by Carroll under this rule.

---

[2] Carroll also requests an injunction against the government's destruction of its internal investigative materials. This request should be denied for the same reasons that Carroll's request for an injunction against the government releasing evidence to its owners should be denied and because she has not made a proper Rule 6(e) request for grand jury materials. In any event, Carroll has made no showing that there is any risk that the government will destroy its own internal investigative materials.

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 6

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

## 2. A preliminary injunction is not warranted.

A plaintiff seeking a preliminary injunction must establish that she is likely to succeed on the merits; that she is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in her favor; and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008). Plaintiff has not even attempted to meet these requirements, nor can she.

### (i) Carroll is unlikely to succeed in obtaining investigative materials from the government.

It is unlikely that Carroll will succeed in her efforts to obtain many (if any at all) of the government's investigatory materials. First, Carroll's requests for materials made under the Freedom of Information Act ("FOIA") (attached to the Declaration of Amanda Lee) improperly request information about Copperfield.[3] The regulations governing FOIA generally prohibit disclosure of third-party information unless the requester has written authorization from the third-party or proof that the third-party is deceased. *See* 28 C.F.R. § 16.3(a); *see also* Department of Justice Freedom of Information Act Reference Guide at 5 (May 2006), *available at* http:www.justice.gov/oip/referenceguidemay99.htm (noting that "files relating to another person regarding a matter the disclosure of which would invade that person's privacy," including "information that would show that someone else … has ever been the subject of a criminal investigation," "ordinarily will not be disclosed" without consent or proof of death). These regulations make sense given that FOIA exempts from disclosure information if such disclosure would constitute a "clearly unwarranted invasion of personal privacy" as well as records compiled for law enforcement purposes where

---

[3] Carroll's request is not — as she suggests in her letter to the government — a "*Touhy*" request, but rather a garden-variety FOIA request, as the United States is not a party to this action and no subpoena, order, or other court demand has issued. *See* 28 C.F.R. § 16.21(a) (specifying that DOJ *Touhy* regulations apply in federal and state proceedings in which the United States is a party or when a "subpoena, order, or other demand . . . of a court or other authority is issued for such material or information").

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 7

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1 production of those records could constitute an unwarranted invasion of personal privacy.[4]
2 *See* 5 U.S.C. § 552(b)(6) & (7); *see also Piper v. United States Department of Justice*, 374 F.
3 Supp. 2d 73, 79 (D.D.C. 2005) (noting that private citizens mentioned in investigatory files,
4 including suspects, enjoy privacy interest; there is no public interest in disclosure of such
5 investigatory files because information sheds no light on agency's performance of its duties);
6 *Fisher v. United States Department of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (affirming
7 under FOIA Exemption 6 FBI and DOJ refusal to confirm or deny existence of law
8 enforcement investigatory files concerning third parties where requester failed to provide
9 written authorization for request). Indeed, the current DOJ FOIA Request Form explicitly
10 states that "[t]his form cannot be used for Privacy Act requests <u>or requests for information
11 about a third party</u>." *See* http://foia.fbi.gov/foia_request.htm (emphasis added). Curiously,
12 the two FOIA requests plaintiff made to the DOJ and the FBI do not contain this particular
13 language. *See* Lee Decl., Ex. A, pp. 7–12.

14 Carroll's motion could lead one to believe that it is only a matter of time before she
15 receives the fruits of the USAO's criminal investigation, either through FOIA or through the
16 subpoenas she plans to issue. But, in fact, plaintiff cannot assure the Court that any future
17 *Touhy* request will likely result in disclosure. Where, as here, the United States is not a party,
18 plaintiff's *Touhy* request will likely come in the form of a Federal Rule of Civil Procedure 45
19 subpoena to the United States. *See* 28 C.F.R. § 16.21(a)(2). The United States will have an
20 opportunity to object, Fed. R. Civ. P. 45(c)(2)(B), and both the United States and Copperfield
21 will have an opportunity to move to quash any such subpoena on various grounds. Fed. R.

---

[4] In the Ninth Circuit, the court evaluates four factors to determine whether disclosure constitutes a "clearly unwarranted invasion of personal privacy": (1) the plaintiff's interest in disclosure, (2) the public's interest in disclosure, (3) the degree of the invasion of personal privacy, and (4) the availability of alternative means of obtaining the requested information. *Prof. Programs Group v. Dep't of Commerce*, 29 F.3d 1349, 1354 (9th Cir. 1994). Plaintiff's FOIA request should be denied, not only because the information she seeks is highly private and (some of it is) available through civil discovery, but also because it serves no public interest. *See Baldrige v. Shapiro*, 455 U.S. 345, 360 n.14 (1982) ("The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery.").

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 8

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

Civ. P. 26(c) & 45(c)(3); *see also Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (noting that Court may authorize government not to comply with *Touhy* request where request is burdensome or seeks privileged information).[5]

The Justice Department has issued guidelines for disclosure of internal investigative materials where disclosure is "necessary to pursue a civil or criminal prosecution or affirmative relief." 28 C.F.R. § 16.26(c). In deciding whether to release such information, the Justice Department considers (i) the seriousness of the violation or crime involved, (ii) the past history or criminal record of the violator or accused, (iii) the importance of the relief sought, (iv) the importance of the legal issues presented, and (v) other matters brought to the attention of the Deputy or Associate Attorney General. 28 C.F.R. § 16.26(b) & (c). Here, where Carroll has already been found by law enforcement to have made a false claim of rape, it would seem appropriate for the Justice Department to exercise its discretion to decline to provide internal investigative materials. Why should investigative materials from a taxpayer-funded investigation be provided to support a civil rape claim made by someone who has a history of lying to law enforcement to extort money from private persons?

### (ii) **Carroll cannot show irreparable harm.**

Carroll's argument that "irreparable harm" could result if an injunction does not issue lacks any factual foundation. The first problem with her assertion is that, because the United States is not a party and has not been given notice of this request, we do not even know whether the government intends to return the property to Copperfield or resist a motion for return of property when one is brought. Gaining such knowledge would be an appropriate first step in determining whether any request for a preliminary injunction is even necessary.[6]

---

[5] Plaintiff cites extensively to the *Exxon* case in her motion. But *Exxon* does not stand for the proposition that a court may order the government to handle investigatory and seized materials in some particular way in anticipation of a future *Touhy* request. *Exxon* merely stands for the proposition that whether or not an agency must respond to a proper *Touhy* request depends on the federal rules of civil discovery. *Exxon*, 34 F.3d at 780.

[6] Counsel for Copperfield has today inquired of the government, seeking its position on this issue. See Calfo Decl. ¶ 14, Ex. F.

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 9

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

Second, assuming the government is intending to return the property to Copperfield, Carroll asserts there is some danger that materials returned to Copperfield would be "secreted away" to his private island in the Bahamas. Plf.'s Mot. at 11. This is a serious charge, which Copperfield's counsel is surprised is being asserted without any factual support whatsoever. Carroll has no evidence that Copperfield would take any steps to make it more difficult for Carroll to review evidence. Moreover, Copperfield has no reason to remove property to the Bahamas and, even if he did, whatever is brought there is just as easily returned so that Carroll may inspect and copy it in accordance with the civil discovery rules. Copperfield has no intention of "playing games" of the nature suggested by Carroll during discovery proceedings. Calfo Decl. ¶ 12. This kind of speculative injury cannot be the basis for a finding of irreparable harm. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

Third, Carroll claims there is some additional risk that evidence could be altered, damaged, or destroyed. Carroll has presented no reason to believe there is any greater risk that material could be inadvertently lost or destroyed while the government acts as Carroll's private storage facility than if it is returned to its owner. Copperfield will gain access to this material through counsel, and counsel will discharge their obligation to preserve all evidence that comes into their or Copperfield's possession. Calfo Decl. ¶ 12.

Fourth, *it is Copperfield* who will be prejudiced if the government is allowed to act as the distribution center for discovery of Copperfield's (and others') property. In the normal course of civil discovery, Copperfield would have control over his property, Carroll would make specific discovery requests, and Copperfield could review relevant material and make appropriate objections to the production of it as necessary. This is particularly important in this case, where the government seized voluminous materials during execution of its search warrants, including terabytes of computerized information.

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1   Not only should Carroll not be allowed to skip over the process of formulating
2   discovery requests, but the government cannot possibly be the arbiter of which seized
3   materials are relevant and properly discoverable by Carroll in her civil case. A significant
4   portion of information seized by the government has no relationship to this lawsuit. The
5   government seized material protected by the attorney-client privilege and work product
6   doctrine, which it continues to maintain over Copperfield's objection, much of it in electronic
7   format. *Id.* ¶ 13. Moreover, the material is being stored by the FBI, which does not offer
8   open access to Copperfield to the material. *Id*. Indeed, in order to review or copy such
9   material, the FBI requires adherence to strict rules that are burdensome, time-consuming, and
10  costly. *Id*. Rather than require the government to be the clearinghouse for Copperfield's
11  property, the more appropriate procedure will be for the government to return such property
12  to Copperfield, and for Carroll to obtain relevant records through the civil discovery rules.[7]

### B. CARROLL'S REQUEST FOR AUTHORITY TO ISSUE SUBPOENAS SHOULD BE DENIED AND THE REQUIREMENTS OF RULE 26(f) SHOULD BE OBSERVED.

15  Carroll asserts that she intends to issue subpoenas as soon as the stay is lifted. Plf.'s
16  Mot. at 6. The Court should deny this request and allow the parties to confer regarding
17  discovery as required by Federal Rule of Civil Procedure 26, which provides that "[a] party
18  may not seek discovery from any source before the parties have conferred as required by Rule
19  26(f)" unless authorized elsewhere in the "rules, by stipulation, or by court order." Fed. R.
20  Civ. P. 26(d). Carroll shows no reason why the issues raised in her motion cannot be
21  addressed through the normal course of discovery proceedings. In fact, Rule 26 specifically
22  contemplates that the parties will meet and confer regarding a number of subjects that Carroll
23  has prematurely raised on her motion to lift the stay. For example, at the Rule 26(f)

---

[7] In addition to failing to show that she is likely to succeed on the merits or that irreparable harm will ensue if no injunction is entered, Carroll cannot show that the equities tip in her favor or that the public interest would be served by disclosure. Carroll's request is not made with the public interest in mind: she seeks easy access to materials to use in pursuit of a false rape claim against a celebrity for money damages.

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 11

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1  conference, the parties are required to discuss the nature and basis of their claims and

2  defenses and the possibility of prompt settlement; initial disclosures; *any issues about*

3  *preserving discoverable information*; and develop a proposed discovery plan.  Fed. R. Civ.

4  Proc. 26(f)(2).  The discovery plan must state the parties' views on any changes in the initial

5  disclosure schedule; subjects on which discovery may be needed and whether discovery

6  should be conducted in phases; *any issues about electronically stored information; any issues*

7  *about privilege or work product*; any necessary changes or limitations on discovery; and any

8  other orders (like protective orders) that the court should enter.  Fed. R. Civ. P. 26(f)(3).

9  Moreover, at the conference, Copperfield will raise several discovery issues with

10 Carroll prior to briefing them.  For example, Copperfield will request that Carroll and her

11 lawyers preserve all evidence of communications between them relating to Carroll's false

12 rape claim.  These would include attorney notes, memoranda, e-mail and the like.

13 Copperfield submits that these materials are subject to potential discovery under the crime-

14 fraud exception to the attorney-client privilege.  Copperfield will show that Carroll's claim

15 against Copperfield is itself a crime – a scheme to defraud Copperfield of money by filing a

16 malicious and false criminal complaint against him as well as a malicious civil suit.  Under

17 well-established law, a showing by Copperfield of such criminal activity will allow him to

18 request that the Court conduct an *in camera* review of communications between Carroll and

19 her lawyers to see if her retention of counsel was a part of a scheme by Carroll to commit a

20 crime and, if it was, to order production of such communications to Copperfield.  *See In re*

21 *Grand Jury Proceedings*, 87 F.3d 377, 379 (9th Cir. 1996) (holding that otherwise privileged

22 communications can be "in furtherance of" criminal activity, and therefore within the crime-

23 fraud exception, even if attorney is unaware of and takes no affirmative steps to further

24 crime).  Copperfield will raise many other issues of this kind with Carroll at the discovery

25 conference.  Rather than burdening the Court by requesting a ruling on these issues – and

26

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 12

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

those raised in Carroll's motion to lift stay – now, Copperfield's counsel will first raise them in a Rule 26(f) conference.

### IV. CONCLUSION

For the foregoing reasons, Carroll's motion to lift the stay should be granted, but her remaining requests should be denied.

DATED this 25th day of January, 2010.

YARMUTH WILSDON CALFO, PLLC

By s/Angelo J. Calfo
Angelo J. Calfo, WSBA # 27079
Patricia Eakes, WSBA # 18888
Andrea Ostrovsky, WSBA # 37749
818 Stewart St., Suite 1400
Seattle, Washington 98101
Phone: 206.516.3800
Fax: 206.516.3888
Email: acalfo@yarmuth.com
peakes@yarmuth.com
aostrovsky@yarmuth.com

*Attorneys for Defendant David Copperfield*

DAVID COPPERFIELD'S RESPONSE TO MOTION TO
LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 13

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Kathryn Goater    goater@sgb-law.com

Rebecca Jane Roe    roe@sgb-law.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this 25th day of January, 2010 at Seattle, Washington.

          /s/ *Sonja Rasmussen*
          Sonja Rasmussen
          Legal Assistant

DAVID COPPERFIELD'S RESPONSE TO MOTION TO LIFT STAY ORDER AND OTHER RELIEF
No. C09–1076 JCC– Page 14

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888