Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LACEY CARROLL,

        Plaintiff,

  v.

DAVID SETH KOTKIN, *a.k.a.* DAVID COPPERFIELD,

        Defendant.

C09-1076-JCC

**ORDER**

This matter comes before the Court upon a request from a representative of a local newspaper to unseal judicial records. (Dkt. No. 59). Upon receipt of the letter, this Court ordered any interested party to show cause why the judicial records should not be unsealed. (Dkt. No. 60). Plaintiff, Defendant and the Office of the United States Attorney each filed a response (Dkt. Nos. 61–63), to which Plaintiff and Defendant also filed a reply. (Dkt. No. 64 & 65).

Having reviewed the parties' submissions and attached declarations and exhibits, the Court hereby DENIES the request for the reasons explained below.

## I.   BACKGROUND

Plaintiff filed a complaint with this Court in July 2009, alleging that Defendant sexually assaulted her while she was a visitor on his private Caribbean island. (Dkt. No. 1). According to Plaintiff, Defendant induced her to visit his island under false pretenses, representing to her that the trip was likely to culminate in professional modeling opportunities. Plaintiff alleges that Defendant never intended to provide her with professional opportunities, but that he instead induced her to the island for the sole purpose of sexually assaulting her. (*Id.* 4–6). Her complaint recounts two separate violent sexual assaults. (*Id.* 5–6).

In addition to pursuing her civil remedies with this Court, Plaintiff also reported the alleged incident to federal law-enforcement authorities. An investigation followed. As part of the investigation, federal authorities interviewed several witnesses and seized documents belonging to Defendant. (*See* Dkt. No. 12 at 2). In October 2009, this Court stayed proceedings in this civil matter for six months, in order to give law-enforcement authorities time to complete the criminal investigation. (Dkt. No. 21). In January 2010, the Office of the United States Attorney informed this Court that the criminal investigation had concluded, and that criminal charges would not be filed. (Dkt. No. 22). This Court therefore lifted the stay. (Dkt. No. 36).

Defendant notes that the U.S. Attorney's Office dropped the investigation shortly after learning that the Bellevue Police Department had launched an investigation against Plaintiff for prostitution and making a false statement to a law-enforcement officer. (Dkt. No. 25-2 at 30–46). Bellevue officers had concluded that Plaintiff offered to perform sexual acts on a local man for $2000, and that because the man had declined her offer, she filed a false police report alleging that he had sexually assaulted her. (*Id.*).[1] For Defendant, the reason the Government decided to drop the investigation is clear: The credibility of its chief witness had been seriously undermined. (Dkt. No. 25 at 4). The Government

---

[1] On August 9, 2010, after this case had been dismissed, Plaintiff entered a plea of guilty to one count of obstructing a law-enforcement officer, admitting that she had misrepresented certain facts in the report to police. (Dkt. No. 63-1 at 7–14).

ORDER, C09-1076-JCC
Page 2

neither confirms nor denies Defendant's assertion, stating only that its "long-standing policy is not to comment upon closed criminal investigations." (Dkt. No. 42 at 2).

On March 18, 2010, Plaintiff served subpoenas upon the U.S. Attorney's Office and the Federal Bureau of Investigation (FBI) seeking, *inter alia*, "[d]ocumentation of all interviews of witnesses related to the investigation, including but not limited to recorded or written statements." (*See* Dkt. No. 39-2 at 34). Because the requested information was of a "sensitive and/or personal nature," (Dkt. No. 42 at 3), the Government asked this Court to issue a protective order. A hearing was held on the matter on April 16, and this Court ordered the Government to provide the requested materials in redacted format. (Dkt. No. 48). A few days after the hearing, the parties filed a stipulated protective order in which they agreed that "any discovery in this matter [was to be] used only for purposes of prosecuting or defending [the] lawsuit and not for any other purpose." (Dkt. No. 49). The Government provided the information without further objection.

When the Court held the hearing regarding the subpoenaed materials on April 16, a motion to dismiss Plaintiff's claim of fraudulent misrepresentation was pending. Defendant had filed the motion on March 29, and it was noted for the Court's consideration on April 23. (Dkt. No. 38). On April 19, Plaintiff filed a response brief, to which she attached two documents under seal pursuant to the terms of the stipulated protective order. (Dkt. Nos. 50–54). The documents contain notes of interviews that FBI investigators conducted with women who have visited Defendant's island. The notes are heavily redacted, and nowhere include the identities of the women. They nowhere include any allegations of sexual assault. (Dkt. No. 53). One day after filing her response brief, Plaintiff filed a notice of voluntary dismissal. (Dkt. No. 55). Also one day after filing her response brief, Plaintiff's attorneys issued a press release explaining the decision to voluntarily dismiss the complaint. In relevant part, the press release "encourages the media and the public to press to unseal the documents [that Plaintiff had filed under seal]." (Dkt. No. 63-1 at 5).

On April 22, 2010, this Court dismissed this matter in its entirety. (Dkt. No. 56). The Court granted Plaintiff's motion to seal the two documents on April 28. (Dkt. No. 58). Nothing more happened in this case until August 2, 2010, when this Court received a letter from a representative of a local newspaper asking that the two documents be unsealed. (Dkt. No. 59). The parties' responses and replies followed. (Dkt. Nos. 61–65).

## II.   RELEVANT LAW & LEGAL STANDARD

The common law provides the public with a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 n.7 (1978). This right inheres in the principle that government is accountable to the people. As the Supreme Court has stated, "The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government." *Id.* at 597–98 (internal citations omitted). Rule 5(g) of the Local Rules of Civil Procedure of the Western District of Washington codifies this principle. In relevant part, Local Rule CR 5(g)(2) reads: "There is a strong presumption of public access to the court's files."

The common-law right of access is not absolute, however, and courts have long held the authority to seal judicial records in order to prevent their files from being "used to gratify private spite or promote public scandal[.]" *Warner Communications*, 435 U.S. at 598. Under the common law, therefore, courts properly "refuse[] to permit their files to serve as reservoirs of libelous statements for press consumption[.]" *Id.*; *see also Valley Broadcasting Co. v. U.S. District Court for the District of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986) (stating that the public's common-law right of access can be overcome by "the likelihood of an improper use, including publication of scandalous, libelous, pornographic, or trade-secret materials; [or] infringement of . . . residual privacy rights.").

//

Courts in the Ninth Circuit apply different standards when considering whether a particular document should be sealed, depending on whether the document was filed as part of a dispositive motion or as part of a non-dispositive motion. A party seeking to seal a document attached to a dispositive motion confronts a high hurdle indeed: Such a party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure[.]" *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (internal citations omitted). When a party files a properly argued motion to seal under such circumstances, this Court must "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179.

A party seeking to seal a document attached to a non-dispositive motion confronts a lower hurdle: Rather than bearing the burden of articulating "compelling reasons supported by specific factual findings," such a party need only offer a "particularized showing of good cause." *Foltz v. State Farm Mutual Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). This lower standard is appropriate because "the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action." *Kamakana*, 447 F.3d at 1179 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)).[2]

Under either standard, this Court recognizes a duty to explain to the public any decision sealing presumptively accessible judicial records. If this Court decides to seal any record within its file, therefore, it must "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

//

---

[2] The Local Rules codify the different standards. In relevant part, Local Rule 5(g)(2) provides: "With regard to dispositive motions, [the strong presumption of public access] may be overcome only on a compelling showing that the public's right of access is outweighed by the interests of the public and the parties in protecting the court's files from public review." It continues: "With regard to non-dispositive motions, this presumption may be overcome by a showing of good cause under Rule 26(c) [of the Federal Rules of Civil Procedure]." Local Rule CR 5(g)(2).

ORDER, C09-1076-JCC
Page 5

## IV. DISCUSSION

Under either the higher standard of "compelling reasons" or the lower standard of "good cause," Defendant has met its burden of demonstrating that the documents at issue should be sealed.

### i. Proper Standard

The parties dispute which standard governs the Court's discussion. Ordinarily, a motion to dismiss is treated as a dispositive motion, subject to the higher "compelling reasons" standard. Defendant offers two reasons that the lower "good cause" standard applies notwithstanding the general rule. First, Defendant argues that the motion to dismiss "was not a dispositive motion because the Court never was given the opportunity to rule on the merits of the motion." (Def. Resp. 6 (Dkt. No. 63)). Defendant therefore argues that "a review of the documents attached to a motion which was not fully briefed and never was decided by the Court would not help the public understand the judicial process, and does not justify application of the standard applied to dispositive motions." (*Id.*). Second, Defendant points to the general rule that a motion to dismiss is resolved by examining only the four corners of the complaint, and argues that Plaintiff ran afoul of the pleading rules by "improperly attach[ing] documents to her briefing on the motion to dismiss." (*Id.* 6). Defendant argues that under such circumstances, "the documents should not be treated as a judicial document attached to a dispositive motion, but rather as documents exchanged in pretrial discovery and governed by [the] good-cause standard." (*Id.* 7).

Plaintiff disagrees, relying on the principle that a motion to dismiss is "obviously dispositive." (Pl. Reply 4 (Dkt. No. 64)). Plaintiff also argues that the attached documents fell within the pleading rules, because "[w]hen a party submits exhibits or factual material in response to a motion to dismiss, it merely triggers treatment of the motion as one for summary judgment[.]" (*Id.* 5). Defendant's response anticipates Plaintiff's argument: "If any other materials are considered on a motion to dismiss, it requires converting the motion to dismiss into a motion for summary judgment. In this case, conversion of Defendant's motion to dismiss into a motion for summary judgment would be problematic as it would

1 arguably nullify Plaintiff's voluntary dismissal." (Def. Resp. 7 (Dkt. No. 63) (citing *Sequa Corp. v. Gelmin*, 1993 WL 437726 at *1 (S.D.N.Y. 1993) ("When a motion to dismiss . . . ripens into a motion for summary judgment, the automatic right of dismissal . . . disappears.")).

Defendant's arguments have great force. Happily, this Court need not resolve these intricate and technical questions of civil procedure: Because Defendant prevails under the higher standard of "compelling reasons," he necessarily also prevails under the lower standard of "good cause."

### ii. Compelling Reasons

Plaintiff's response brief, purportedly filed with this court of law to save her claim of fraudulent misrepresentation from dismissal, evinces an intent to rehabilitate her reputation in the court of public opinion. Plaintiff's response brief emphasizes allegations of dubious legal significance. For example, Plaintiff alleges in bold-faced type that she herself wrote to Defendant before her trip, "*thanking him for considering including her in the promotional activities on his island[.]*" (*Id.* 2–3) (emphasis in original). She also alleges in bold-faced type that Defendant's assistant stated to her that "*Defendant [] owned an island and resort and was often looking for people to do promotional work for him, including modeling for his brochures.*" (*Id.* 2) (emphasis in original). Plaintiff nowhere explains how her own statement and the statement of another person advance her claim of fraudulent misrepresentation against Defendant, much less establish her claim by the "clear, cogent and convincing evidence" that the law requires.[3] The allegations square with accounts that witnesses provided the FBI during its investigation of Defendant, however, and these accounts corroborate Plaintiff's claim that she was induced to visit the island under false pretenses. One anonymous witness reports, for example, that an unidentified man induces women to visit his island by promising future modeling opportunities when no such opportunities in fact exist. (Sealed Document (Dkt. No. 53 at 5)).

//

---

[3] *See Sigman v. Stevens-Norton*, 425 P.2d 891, 895 (Wash. 1967) (requiring that fraud be proven by "clear, cogent and convincing evidence").

ORDER, C09-1076-JCC
Page 7

This Court has no reason to doubt the witness's statement. This Court notes only that the statement fails to advance Plaintiff's claim. The Federal Rules of Evidence prohibit Plaintiff from proving *her* claim of fraudulent misrepresentation by offering evidence that Defendant fraudulently induced *another woman* to attend his island.[4] Because it nowhere uses the allegations that Plaintiff herself emphasized in bold-faced type to advance her legal claim, and because it corroborates Plaintiff's claim only in a way that is foreclosed by the rules of evidence, Plaintiff's pleading arouses this Court's skepticism.

Further developments arouse the Court's ire. On the very day that Plaintiff voluntarily dismissed her claim, her attorneys issued a press release recounting for media representatives that the subpoena of the Government's criminal-investigation file had successfully secured "documents related to [Defendant's] scheme of targeting young women who attend his shows, and statements of other women who corroborate [Plaintiff's] claims." (Dkt. No. 63-1 at 5). In short, despite having stipulated to a protective order requiring that the documents be "used only for the purposes of prosecuting or defending the lawsuit and not for any other purpose," (Dkt. No. 49 at 1), Plaintiff authorized her attorneys to issue a press release on the very day that she had disclaimed further attempts to prosecute the lawsuit. Whatever private purpose Plaintiff was pursuing by referring to the documents, therefore, she necessarily ran afoul of the protective order to which she stipulated before this Court.

Plaintiff's improper use of the sealed documents justify the conclusion that Plaintiff is likely to use the documents currently under seal to "gratify private spite or promote public scandal." *See Warner Communications*, 435 U.S. at 598. The likelihood of such an improper use, without more, provides a "compelling reason" that justifies maintaining the records in sealed format. *See Valley Broadcasting*, 798 F.2d at 1294. Another compelling reason also exists. The integrity of the judicial process requires

---

[4] As Rule 404(b) of the Federal Rules of Evidence provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Rule lists other purposes for which such evidence might be admissible. It is revealing that Plaintiff's response brief nowhere argues that this Court should consider the sealed witness statements for any of the listed purposes.

ORDER, C09-1076-JCC
Page 8

1  that parties adhere to commitments they make during the discovery process. Plaintiff ran afoul of that
2  requirement by relying on sealed documents that she had agreed to use only for the purposes of
3  litigation to advance her cause before the court of public opinion. This court of law refuses to allow her
4  to benefit from her breach of the protective order to which she stipulated.

### iii. Public Interest

The public's interest in the documents is slight indeed. The documents are redacted virtually in their entirety. They contain the statements of unidentified witnesses, alleging that an unidentified man induces women to visit his island by promising them modeling opportunities that he never provides. None of the unidentified witnesses alleges that the man sexually assaulted her or anyone else. Because of the heavy redaction, it is impossible to understand the context of the statements that the FBI disclosed. Because the Court never considered the documents or otherwise relied upon them in rendering a decision, they cannot further "the citizen's desire to keep a watchful eye on the workings of public agencies," nor aid the newspaper publisher in his responsibility to "publish information concerning the operation of government." *Warner Communications*, 435 U.S. at 597–98.

Because Defendant has met his burden of demonstrating a "compelling reason" and "good cause" to maintain the documents at issue under seal, and because the public has a relatively insignificant interest in the documents, this Court denies the request to unseal the documents.

## V. CONCLUSION

For the reasons explained above, the Court DENIES the request to unseal documents. (Dkt. No. 59).


SO ORDERED this 26th day of August, 2010.

JOHN C. COUGHENOUR
United States District Judge